**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § | |
| HL BUILDERS, LLC f/k/a CD HOMES, LLC, | § § § § | Case No. 19-32825 |
| Debtor. | § § | (Chapter 11) |

**EMERGENCY MOTION OF PETITIONING CREDITORS HOUTEX BUILDERS, LLC, 415 SHADYWOOD, LLC, AND 2203 LOOSCAN LANE, LLC TO APPOINT A CHAPTER 11 TRUSTEE**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 23 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 23 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE BANKRUPTCY JUDGE:

Houtex Builders, LLC ("Houtex"), 415 Shadywood, LLC ("Shadywood"), and 2203 Looscan Lane, LLC ("Looscan" and collectively with Houtex and Shadywood, the "Petitioning Creditors") file this *Emergency Motion to Appoint a Chapter 11 Trustee* (the "Motion"), and respectfully state as follows:

## FACTUAL BACKGROUND

1. This involuntary bankruptcy case (the "<u>Chapter 11 Case</u>") was filed on May 20, 2019 (the "<u>Petition Date</u>") pursuant to § 303 of the Bankruptcy Code.

2. There is no committee or trustee appointed in this Chapter 11 Case.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. § 1334.

4. This is a core proceeding under 28 U.S.C. § 157(b)(2).

5. Venue of this Chapter 11 Case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105(a) and 1104 of the Bankruptcy Code.

## THE PETITIONING CREDITORS' CLAIMS

7. HL Builders, LLC, which was until recently known as CD Homes, LLC (the "<u>Debtor</u>"), is involved in the construction of single-family residences in the Houston area. The Debtor is currently involved in five projects.

8. In 2014, the Petitioning Creditors entered into a series of contracts with the Debtor. Specifically, each Petitioning Creditor and the Debtor entered into a (i) Contractor Agreement; (ii) Investor Agreement; and (iii) Option Agreement (collectively, the "<u>Contracts</u>"). Each set of Contracts governed the Debtor's construction of one single-family home.

9. The Investor Agreements stated that the Petitioning Creditors agreed to use the Debtor as the exclusive general contractor for the construction of the Petitioning Creditors' properties: 415 Shadywood, 2203 Looscan, and 5325 Lynbrook Lane (each a "<u>Property</u>" and collectively, the "<u>Properties</u>"). Investor Agreement at ¶ 2.

10. The Contractor Agreements state that the Debtor would "substantially complete" work on the Properties in 2016. Contractor Agreement at § 2.

11. Further, the Contractor Agreements obligate the Debtor to "make a good faith effort" to resolve any mechanics liens filed on the Properties. Contractor Agreement at § 6.h. Each Petitioning Creditor had the right to "withhold funds due to [the Debtor] and pay [mechanics] liens directly if same cannot be resolved within a reasonable period of time." *Id.*

12. With respect to the Debtor's compensation, the Investor Agreements state that the Petitioning Creditors "acknowledge[] that [Debtor]'s overhead is $60,000 and is to be paid from loan draws as requested by [the Debtor] during the construction process." Investor Agreement at ¶ 2. In other words, the Debtor was to be paid $60,000 per project.

13. The Investor Agreements also provide that if funds are required to make any payments that exceed the sum of the Petitioning Creditors' equity (i.e., the Equity Loans described below) and the construction loan, "**all such funds are to be provided by [the Debtor]**." *Id.* at ¶ 6 (emphasis added).

14. The Investor Agreements establish the following distribution waterfall upon the sale of a Property:

> The title company is to distribute Net Proceeds as follows: First, Net Proceeds will be used to repay the outstanding balance of the [Construction] Loan. Second, Net Proceeds will be used to repay Investor's equity of [a specified amount that is different for each Property] (hereafter "Investor's Equity"). Third, Net Proceeds will be used to pay 5.5% per annum interest on Investor's Equity. Fourth, Net Proceeds will be used to pay Investor [a specified amount of either $50,000 or $100,000 depending on the property]. Fifth, Net Proceeds will be used to pay CD any amount it was required to provide under paragraph 6 of the Agreement. Sixth,

Net Proceeds will be used to pay CD [the amount specified in tier 4]. All remaining Net Proceeds will be split equally between Investor and CD.

Id. at ¶ 8. Section 8 of the Investor Agreement goes on to provide: "***If Net Proceeds are less than the amount required to make the first through the fourth payments listed above, then [the Debtor] is to provide at closing the funds necessary to make up for the shortfall***." Id. (emphasis added).

15. The amounts of the Equity Loans specified in each Investor Agreement are as follows: $405,000.00 for 415 Shadywood; $638,625.00 for 2203 Looscan; $339,000 for 5325 Lynbrook; and $459,750 for 3 Thornblade.

16. Each set of Contracts operates as a unified whole. For example, the Investor Agreement obligates the Petitioning Creditors to grant options, though the options are substantively set forth only in the Option Agreement. The Contractor Agreements nominate the Debtor to be the contractor on the properties, but only the Investor Agreements describe how the Debtor is compensated. Also, capitalized terms used in some agreements are defined in others. Thus, each set of Contracts was executed as an integrated transaction governing the financing and construction of improvements on each Property.

17. The Debtor committed numerous material breaches of the Contractor and Investor agreements, including but not limited to the following:

- Instead of funding the shortfalls as required under Sections 6 and 8 of the Investor Agreements, the Debtor caused the Petitioning Creditors to borrow millions of dollars from third-party "investors."

- The Debtor allowed unpaid liens to be filed against the Properties in contravention of the terms of the Investor Agreements.

- The Debtor failed to complete the Properties on time, missing the deadlines in the Contractor Agreements by years.

- On information and belief, the Debtor paid itself more than $60,000 per project.

18.     The Debtor caused Houtex to enter into loan with Spirit of Texas Bank in the amount of $1.6 million (the "$1.6 Million SOTB Note"). According to a Sources and Uses chart prepared by the Debtor and its principal Bob Parker, the Debtor caused Houtex, Shadywood and Looscan to use proceeds from the $1.6 Million SOTB Note to fund required expenses for the Properties in the aggregate amounts as follows:

- 6111 Crab Orchard (owned by Houtex Builders): $535,596.50
- 3 Thornblade (owned by Houtex Builders): $467,635.43
- 2203 Looscan (owed by Looscan): $20,000
- 415 Shadywood (owned by Shadywood): $406,323.41

19.     The obligation to put up the funds for these shortfalls rests squarely with the Debtor under the Investor Agreement. Neither Houtex, nor Shadywood not Looscan had any obligation to obtain the $1.6 Million SOTB Note to fund such costs. The Debtor must reimburse Houtex, Shadywood and Looscan for these breaches of the Investor Agreements.

20.     The Debtor also caused Houtex to enter into a $500,000 line of credit from Spirit of Texas Bank (the "SOTB LOC") which had $483,754.90 outstanding principal and interest as of the Houtex's petition date. The Debtor also caused Houtex to enter into a $387,254.71 loan from Great Southwest Financial Corp. Although Houtex, Shadywood and Looscan have not yet determined the exact use of these funds (because the Debtor has refused to timely comply with discovery requests), there are only two possible scenarios for how the funds were used. Either the funds were used in connection with the Properties, in which case, this is a breach of the Investor Agreements since the Debtor is required to provide such extra funds, not Houtex, Shadywood or Looscan. Alternatively, the funds were not used in connection with any of the Properties which would mean the Debtor stole the money and diverted it elsewhere. If this is the case, then Houtex has a conversion claim against

the Debtor. Either way, Houtex has a claim against the Debtor for $871,000.61 – the aggregate amount owed on the SOTB LOC and the Southwest Financial Corp. claim.

21. The Debtors have valid liquidated claims against the Debtor for breaching the Investor Agreement and possibly conversion in the following amounts:

- 3 Thornblade: $1,874,232.54
- 2203 Looscan: $20,000
- 415 Shadywood: $406,323.41

22. The Petitioning Creditors are continuing to investigate additional potential claims against CD Homes and Mr. Parker.

### THE DEBTOR'S MANAGEMENT

23. Anna Williams owns 100% of the member interests in the Debtor. Robert "Bob" Parker, Williams's husband, is a self-described "consultant" to the Debtor who nonetheless exercises substantial control over the Debtor's operations.

24. Mr. Parker is liable on multi-million dollar, non-dischargeable judgment for fraud to an entity that is owned and controlled by Jonathon Finger. On information and belief, the Petitioning Creditors submit that the Debtor's management arrangement is meant to avoid making member interests in the Debtor subject to the judgment.

25. Mr. Parker also acted as an agent of the Petitioning Creditors between 2014 and 2018, during which time he controlled the Petitioning Creditors' operations. As Mr. Parker explained in a recent deposition, he routinely "rolled forward" debts incurred on the Petitioning Creditors' real-estate construction projects instead of paying them off when a property sold. Third-party liens not paid at closing would be transferred to a new construction project, even when the lienholders did not provide new value for the new project.

26. Mr. Parker also allowed other claims to accumulate against the Petitioning Creditors. For example, Charles Foster—the principal of Houtex—has made a claim against Houtex for

approximately $4 million that he contributed to Longmont and Green Tree projects but was never repaid.

27.     Meanwhile, substantial sums of money were transferred from the Petitioning Creditors to the Debtor and never repaid. While the Debtor claims that it used these funds to pay construction expenses, evidence suggests that those monies were paid as distributions to Anna Williams and/or Robert Parker.

28.     Based in the bank records produced by the Debtor to the Petitioning Creditors, the bank records reflect that from the period from September 2012 to August 2018 more than $5,000,000 in membership distributions were paid from the Debtor to Anna Williams, the owner of the Debtor and wife of Bob Parker. The Petitioning Creditors believe that these distributions represent amounts illegally obtained by the Petitioning Creditors, Mr. Foster and potentially other investors.

29.     Based on the discovery produced by the Debtor to the Petitioning Creditors, the documents show that the Debtor does not produce financial statements or maintain a general ledger. The Debtor purportedly does its bookkeeping entirely with paper files which makes it extemly difficult to trace how funds were obtained and used by the Debtor.

30.     In addition, the presiding judge in the Petitioning Creditors' chapter 11 case found Mr. Parker's testimony about his ownership interest in certain items owned by the Petitioning Creditors to be "not credible."

## CAUSE EXISTS TO APPOINT A CHAPTER 11 TRUSTEE

31.     The Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations. *See In re Eurospark Indus.*, 424 B.R. 621, 627 (Bankr. E.D. N.Y. 2010). It is well recognized, however, that a debtor-in-possession owes fiduciary duties to the bankruptcy estate including "the duty to protect and conserve property in its possession for the benefit of the creditors" and the duty to "refrain[ ] from acting in a manner which

could damage the estate or hinder a successful reorganization of the business." *Matter of Cajun Elec. Power Coop., Inc.*, 191 B.R. 659, 661 (M.D. La. 1995), *decision vacated on other grounds*, 69 F.3d 746 (5th Cir. 1995), *opinion withdrawn on other grounds in part on reh'g,* 74 F.3d 599 (5th Cir. 1996), *and aff'd*, 74 F.3d 599 (5th Cir. 1996); *see also In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (quoting *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988)). "The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989).

32. If a debtor-in-possession defaults in that respect, the debtor may be dispossessed of its officer and alternative management may be appointed in the form of a Chapter 11 trustee. *See Schuster v. Dragone*, 266 B.R. 268, 271 (D. Conn. 2001).

33. Section 1104(a) of the Bankruptcy Code provides that:

(a) . . . on request of a party in interest or the United States Trustee, and after notice and a hearing, the Court shall order the appointment of a trustee –

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of the assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

34. Determining whether "cause exists to appoint a chapter 11 trustee is highly fact-intensive and requires the court to consider 'whether the totality of the circumstances warrant[s] appointment of a trustee.'" *In re ATP Oil & Gas Corp. ("ATP")*, No. 12-36187, 2013 WL 9792582, at

*8 (Bankr. S.D. Tex. Feb. 10, 2013) (quoting *In re Sundale, Ltd.*, 400 B.R. 890, 900 (Bankr. S.D. Fla. 2009)).

35. In the Fifth Circuit, a party moving for the appointment of a trustee must demonstrate cause under § 1104(a)(1) by clear and convincing evidence. *Matter of Cajun Elec. Power Coop., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995); *see also In re Bayou Group, LLC*, 564 F.3d 541, 546 (2d Cir. 2009); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007). Once that burden is met, however, appointment of a trustee becomes mandatory. 11 U.S.C. § 1104(a) (providing that court "shall order" appointment of trustee where cause exists); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 525 (holding that where a court finds cause under § 1104, "there is no discretion; an independent trustee must be appointed").

36. In this case, there are four separate grounds for the appointment of a trustee: (a) Mr. Parker's track-record of fraud and mismanagement; (b) the Debtor's lack of adequate financial reporting; (c) Mr. Parker's conflict of interest; and (d) lack of creditor confidence.

### (i) Cause Is Established Under 11 U.S.C. § 1104(a)(1)

37. "Cause exists under § 1104(a)(1) when the debtor engages in conduct such as fraud, dishonesty, incompetence, gross mismanagement, or similar cause." *In re Cajun Elec. Power Co-op., Inc.*, 191 B.R. at 661; *see also In re 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr. S. D.N.Y. 2007) ("A court may consider both the pre- and postpetition misconduct of the current management when making the determination that 'cause' exists for the appointment of a trustee.").

38. The list of wrongs constituting "cause" warranting the appointment of a trustee is non-exclusive. *In re Cajun Elec. Power Co-op., Inc.*, 191 B.R. at 661 ("It is clear that the grounds for cause are not limited to those enumerated in section 1104(a)(1)"); *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988) (the "court need not find any of the enumerated wrongs to find cause for appointing a trustee"). "Factors relevant to the appointment of a trustee under § 1104(a)(1) include:

allegations of conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; alleged misuse of assets and funds; alleged inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence." *In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn. 2000). Disputes over the management of a debtor can constitute "cause" under § 1104(a)(1). *In re New Towne Dev., LLC*, 404 B.R. 140, 144 n.14 & 147 (Bankr. M.D. La. 2009) (finding that appointment of a chapter 11 trustee was warranted where an ownership dispute concerning a creditor who filed an involuntary petition against the debtor effectively paralyzed the debtor's management).

39. Although naked allegations of misconduct, standing alone, are an insufficient basis for the appointment of a trustee, it is not necessary for this Court to conduct a mini-trial of each of the factual allegations. Rather, appointment of a trustee is mandated if this Court determines that the allegations have a "substantial basis in the facts." *In re Am. Res., Ltd.*, 54 B.R. 245, 247 (Bankr. D. Hawaii 1985); *see also Tradex Corp. v. Morse*, 339 B.R. 823 (D. Mass. 2006) (finding, in a case decided under preponderance of the evidence standard, that bankruptcy court properly ordered appointment of trustee based on credible, though disputed, allegations against debtor that were the subject of a grand jury proceeding).

40. A trustee should be appointed in light of Mr. Parker's track-record of fraud and dishonesty. He is the subject of a multi-million fraud judgment, and the Court recently found his testimony regarding his ownership interest in certain property to be not credible.

41. Further, discovery in the Petitioning Creditors' chapter 11 cases establishes that the Debtor's record-keeping is inadequate. The Debtor claims to not have any balance sheets, income statements, profit-and-loss statements or similar documents. According to Mr. Parker, the Debtor does not even maintain a general ledger.

42. For these reasons, the Petitioning Creditors submit that sufficient cause exists for the appointment of a Chapter 11 trustee in this case pursuant to 11 U.S.C. § 1104(a)(1).

**(ii) Cause Is Established Under 11 U.S.C. § 1104(a)(2)**

43. Even if the Court finds that the Debtor has failed to demonstrate cause for the appointment of a trustee under § 1104(a)(1), a Chapter 11 Trustee would be in the best interests of creditors pursuant to § 1104(a)(2).

44. Section 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee even when no "cause" exists. *See Sharon Steel*, 871 F.2d at 1226 (describing the standard as "flexible"); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Under § 1104(a)(2), the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, [ ] and other interests of the estate." 11 U.S.C. § 1104(a)(2). *See, e.g., Sharon Steel*, 871 F.2d at 1226.

45. Under § 1104(a)(2), courts should "'eschew rigid absolutes and look to the practical realities and necessities.'" *ATP*, 2013 WL 9792582, at *12 (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. at 168).

46. Among the factors considered by the courts in assessing motions brought under § 1104(a)(2) include: "(1) the trustworthiness of the debtor, (2) the debtor's past and present performance and prospects for rehabilitation, (3) the confidence or lack thereof of the business community and of creditors in present management, and (4) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment." *Matter of Cajun Elec. Power Co-op, Inc.*, 191 B.R. at 661–62.

47. Here, the factors exist for the appointment of a Chapter 11 trustee under § 1104(a)(2). The appointment of a trustee is in the best interest of creditors because a substantial adversity of interest exists. Mr. Parker was instrumental in giving rise to the claims that underlie the Petitioning Creditors' involuntary petition. Since Anna Williams, Bob Parker's wife, is the sole member of the

Debtor, the Debtor lacks independent managers who could analyze and pursue claims against its principals for the benefit of creditors, including the Petitioning Creditors.  *See e.g., In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008) ("An independent trustee should be appointed under § 1104(a)(2) when they suffer from material conflicts of interest, and cannot be counted on to conduct independent investigations of questionable transactions in which they were involved.").

48. Second, the Petitioning Creditors have no confidence in the Debtor's management and support the appointment of a chapter 11 trustee.  *In re Patman Drilling Int'l, Inc.*, No. 07-34622-SGJ, 2008 WL 724086, at *6 (N.D. Tex. Mar. 14, 2008) (finding that "cause" existed under § 1104(a)(2) when "the majority of the Debtor's creditor body [] lost confidence in the Debtor's management"). As detailed above, Mr. Parker's tenure as manager of the Petitioning Creditors evinced mismanagement and misuse of funds.

## BASIS FOR EMERGENCY CONSIDERATION

49. The Petitioning Creditors believe that a trustee should be appointed without delay.  In light of Mr. Parker's control of the Debtor, his own track-record, and the Debtor's lack of financial reporting, the Petitioning Creditors fear that the Debtor may attempt to improperly remove assets from the Debtor's estate.

*[Reminder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Petitioning Creditors respectfully request that this Court (i) schedule an emergency hearing at such date and time as is convenient for the Court on the Motion, (ii) enter an order appointing a chapter 11 trustee to manage the Debtor's estate and (iii) grant the Petitioning Creditors such other and further relief as is just and proper.

Dated: May 21, 2019

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*General Bankruptcy Counsel to the Petitioning Creditors*

**CERTIFICATE OF SERVICE**

I certify that within one business day this filing, I served a true and correct copy of the preceding motion via messenger to Office of the US Trustee, 515 Rusk Ave., Ste 3516, Houston, TX 77002 and on Mr. Richard Fuqua, counsel to the Debtor, by email to the following email address: RLFuqua@fuqualegal.com.

*/s/ Charles M. Rubio*
Charles M. Rubio