

ENTERED
10/30/2020

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **HL BUILDERS, LLC; aka CD HOMES,** | § | **CASE NO: 19-32825** |
| **LLC** | § | |
| **Target Debtor** | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

Following the dismissal of the involuntary petition filed against HL Builders, LLC emanated a single matter self-styled as "Application for Attorney's Fees and Costs Upon Dismissal of Involuntary Petition Pursuant to 11 U.S.C. § 303(i)(1)" filed by HL Builders, LLC, f/k/a CD Homes LLC and Fuqua & Associates P.C. seeking $99,333.50 in legal fees and $2,809.35 in costs for a total request of $102,142.85. On June 10, 2020, the Court held a hearing on the fee application. For the reasons stated below, the Court finds that the fee application should be granted in part and denied in part. HL Builders, LLC is awarded $79,968.50 in legal fees and $2,344.35 in expenses for a total award of $82,312.85.

## I.  FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

On May 20, 2019, HOUTEX Builders, LLC, 2203 Looscan Lane, LLC, and 415

Shadywood, LLC (collectively "*Petitioning Creditors*")[1] filed an involuntary petition against HL

Builders, LLC f/k/a CD Homes LC ("*HL Builders*").  The involuntary petition was subsequently

amended on July 11, 2019 ("*Amended Involuntary Petition*"), and after a full trial on the merits

the Court found that the Petitioning Creditors lacked standing to file the Amended Involuntary

Petition, dismissed the Amended Involuntary Petition, and because HL Builders neither

consented to entry of an order for relief nor waived its right to judgment under § 303(i), the

Court permitted HL Builders to file an application for fees and expenses pursuant to § 303(i)(1).

On March 19, 2020, HL Builders filed its "Application for Attorney's Fees and Costs Upon

Dismissal of Involuntary Petition Pursuant to 11 U.S.C. § 303(i)(1)" ("*Fee Application*").   On

April 9, 2020, Petitioning Creditors filed an objection ("*Fee Objection*") to the Fee Application

and on June 10, 2020, the Court held a hearing on the Fee Application and Fee Objection.[2]  At

the conclusion of the hearing, the Court took the matter under advisement.  The Court now issues

the instant Memorandum Opinion.

## II.        CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district

courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157

allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein

the latter court will appropriately preside over the matter.[3]  Because this Order supplements the

Court's February 18, 2020 judgment to the extent it determines reasonable attorney's fees, the

matter is a core proceeding under 28 U.S.C. § 157(b)(2). This suit is also core under the general

---

[1] ECF No. 1.
[2] ECF No. 61.
[3] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

"catch-all" language because an application for fees in an involuntary bankruptcy is the type of proceeding that can only arise in the context of a bankruptcy case.[4] Therefore, awarding reasonable fees and expenses in an involuntary bankruptcy proceeding pursuant to 11 U.S.C. § 303(i) can only occur in a bankruptcy court and there is no state law equivalent for this action.

This Court may only hear a case in which venue is proper.[5] Section 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."[6] The instant matter stems from Debtor's involuntary chapter 7 case and the filing of the Amended Involuntary Petition; therefore, venue of this proceeding is proper.

### B. Constitutional Authority to Enter a Final Judgment

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.[7] In *Stern,* which involved a core proceeding brought by the debtor under § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[8] As indicated above, the pending dispute before this Court is a core proceeding pursuant to § 157(b)(2). The ruling in *Stern* was only limited to the one specific type of core proceeding involved in that dispute, which is not implicated here. Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit

---

[4] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987)).
[5] 28 U.S.C. § 1408.
[6] 28 U.S.C. § 1409(a).
[7] *Stern v. Marshall*, 564 U.S. 462 (2011); *but see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that parties may consent to jurisdiction on non-core matters).
[8] *Id.* at 503.

this Court from entering a final judgment here.[9]  Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2),[10] this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final judgment in the dispute at bar. In *Stern,* the debtor filed a counterclaim based *solely* on state law; whereas, here, the claim brought by HL Builders is based on an express provision of the Bankruptcy Code—§ 303(i)(1)—and judicially-created bankruptcy law interpreting this provision.  This Court is therefore constitutionally authorized to enter a final judgment on the fee application  filed by HL Builders.

Finally, in the alternative, this Court has the constitutional authority to enter a final judgment regarding the Fee Application because Petitioning Creditors and HL Builders have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[11]  Here, the parties have never objected to this Court's constitutional authority to enter a final judgment. Moreover, the parties engaged in extensive motion practice and participated in two separate trials.  The first trial on the involuntary petition lasted three days and the second one on the fee application lasted one full day in this Court, and not once did they ever object to this Court's constitutional authority to enter a final judgment.  If these circumstances do not constitute consent—implied, if not express—it is inconceivable what does.

---

[9] *See, e.g., Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . We decline to extend *Stern's* limited holding herein.") (Citing *Stern,* 564 U.S. at 475, 503, 131 S.Ct. 2594).

[10] *see First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.),* 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern's* 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . .").

[11] *Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1947 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . .").

### C. Petitioning Creditors' Objections to HL Builders Fee Application

Petitioning Creditors listed several objections to the Fee Application.[12]   Petitioning Creditors advance three general objections and six specific objections, each containing specific arguments therein.  The Court will discuss each in turn.

### 1. Whether HL Builders Should Be Awarded Attorney's Fees

Absent a specific fee-shifting statutory or contractual authorization, federal courts apply the so-called "American Rule," which requires that each side in a lawsuit bear liability for its attorney's fees.[13]   The Supreme Court imparted in *Alyeska* that Congress had reserved for itself the task of determining when exceptions should be allowed to the American Rule.[14]   Under the Bankruptcy Code, Congress has, in § 303(i), established an exception to the American Rule by granting the court discretion to award attorney's fees upon dismissal of an involuntary petition.  Under § 303(i), in relevant part:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> > (1) against the petitioners and in favor of the debtor for—
> >
> > > (A) costs; or
> > >
> > > (B) a reasonable attorney's fee.

The use of the discretionary term "may" has resulted in different analytical approaches to the ways in which courts have awarded costs and fees under § 303(i).[15]   Some courts have used the "automatic award" approach where an award of attorney's fees is the normal result

---

[12] ECF No. 61.
[13] *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247–50 (1975).
[14] *Id.* at 269.
[15] *In re Clean Fuel Techs. II, LLC, 544 B.R. 591*, 601 (Bankr. W.D. Tex. 2016).

after dismissal of an involuntary petition.[16]   In other words, the loser pays.  At the other end of the spectrum, some courts have adopted the "straight discretion" approach where there is no presumption applied, and the court only examines the totality of the circumstances in awarding fees.[17]

Next, with subtle differences in its application, a majority approach has emerged in harmonizing the two views described above.  Under the majority view followed by many bankruptcy courts in Texas,[18] § 303(i) creates a presumption that attorney's fees will be awarded against unsuccessful petitioning creditors, with the presumption being rebuttable based on the "totality of the circumstances" test.[19]   The burden of rebutting the presumption and establishing that the fees were unwarranted under the totality of the circumstances test falls on the unsuccessful petitioning creditor.  Under the totality of the circumstances test, the court considers four key factors in determining whether a petitioning creditor has rebutted the presumption that fees should be awarded.[20]   Those four factors include: (1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and objectives behind filing the involuntary petition.[21]   The Court may also consider any other additional material factors that it chooses to consider and deems relevant.[22]

---

[16] *See In re Commonwealth Sec. Corp.,* 2007 WL 309942, at *6 (Bankr. N.D. Tex. Jan. 25, 2007).

[17] Isabella C. Lacayo, *After the Dismissal of an Involuntary Bankruptcy Petition: Attorney's Fees Awards to Alleged Debtors*, 27 Cardozo L. Rev. 1949, 1969 (2006).

[18] *See, e.g., In re Clean Fuel Technologies II, LLC*, 544 B.R. at 602 (*citing, inter alia, In re TRED Holding, L.P.*, 2010 WL 3516171, at *7 (Bankr. E.D. Tex. Sept. 3, 2010)); *see In re Funnel Sci. Internet Mktg.*, LLC, 551 B.R. 262, 275 (E.D. Tex. 2016).

[19] *In re Clean Fuel Techs. II, LLC*, 544 B.R. at 601; *see also In re TRED Holdings, L.P.*, 2010 WL 3516171, at *7 ("If an involuntary bankruptcy petition is dismissed, there is a rebuttable presumption the alleged debtor is entitled to reasonable fees and costs.").

[20] *Id.*

[21] *Id.*

[22] *Id.*

In their Fee Objection, Petitioning Creditors argue that under the four-factor totality of the circumstances test, the Court should decline to award attorney's fees. Petitioning Creditors allege that the following three factors weigh in favor of not awarding fees in this case: (i) the merits of the involuntary petition; (ii) the reasonableness of the actions taken by the Petitioning Creditors; and (iii) the motivation and objectives behind filing the involuntary petition. The Court will consider each one in turn.

### a. The Merit of Petitioning Creditors' Involuntary Petition

Though ultimately unsuccessful, this first factor analyzes the degree to which an involuntary petition had merit.[23] In its Fee Objection, Petitioning Creditors contend that this Court found numerous facts which suggest that there was merit for commencing the involuntary petition:

(i)     Each of the Petitioning Creditors are special purpose entities set up to build one or more custom homes with HL Builders.

(ii)    Each Petitioning Creditor and HL Builders were parties to an Investor Agreement.

(iii)   Each Investor Agreement required payments by HL Builders to the Petitioning Creditors, including a $50,000 payment.

(iv)    It is stipulated by both parties that at the closing of each Project, HL Builders did not make a $50,000 payment.[24]

(v)     With respect to the claims against the three Projects sold, there is no contingency as to liability because under the Investor Agreements, HL Builders' legal duty to pay was triggered upon the sale of the Projects.[25]

Further, Petitioning Creditors assert that the three hearing days and the Court's 33-page opinion support the merits of filing the Amended Involuntary Petition.[26] Petitioning Creditors cite to *In re Clean Fuel Technologies*. In that case, the court found that dismissal based on a

---

[23] *Id.* at 603.
[24] ECF No. 52.
[25] *Id.*
[26] ECF No. 23.

dispute as to the amount of petitioning creditors' claim was a technical dismissal that favored against awarding attorney's fees.[27]   Similarly, Petitioning Creditors argue, the Court dismissed the Amended Involuntary Petition on the basis that there was a bona fide dispute as to Petitioning Creditors' claim after making credibility determinations of the witnesses.[28]   However, Petitioning Creditors' application of *In re Clean Fuel Technologies* is fallacious.  While the court in that case did find that the decision to dismiss the involuntary petition was "technical" and a "close call," the court also found that it was "readily apparent that [alleged debtor] was a defunct non-operating entity" with very little cash funds and was not paying creditors.[29]

Here, there is no evidence demonstrating that the dismissal of the Amended Involuntary Petition was technical.  This Court found that nearly every aspect of the Petitioning Creditors' claims were vehemently contested and controverted through live witness testimony and documentary evidence.  While the Court did not determine the actual liability of or amounts due by the parties, it was clear that the Petitioning Creditors' claims are the subject of a bona fide dispute as to liability or amount.  In order to succeed in an involuntary petition, petitioning creditor's claims must *not* be subject to dispute as to amount or liability.[30]   Because the claims were so disputed, Petitioning Creditors had other avenues of judicial resolution prior to filing an involuntary petition.  After all, the filing of an involuntary petition generally should not be a creditor's first avenue of relief.  There is insufficient evidence under this factor to overcome the presumption that fees should be awarded.  Accordingly, this factor weighs in favor of awarding attorney's fees to HL Builders.

**b.  The Reasonableness of Petitioning Creditors' Actions**

---

[27] *In re Clean Fuel Techs. II, LLC*, 544 B.R. at 603.
[28] ECF No. 61.
[29] *In re Clean Fuel Techs. II, LLC*, 544 B.R. at 604.
[30] *See* 11 U.S.C. § 303(b).

Next, the reasonableness of the actions taken by Petitioning Creditors in filing and pursuing the Amended Involuntary Petition must be evaluated. "Creditors are justified in filing an involuntary bankruptcy against a debtor where exclusive bankruptcy powers and remedies may be usefully invoked to recover transferred assets, to insure an orderly ranking of creditors' claims and to protect against other creditors obtaining a disproportionate share of debtor's assets."[31]

Here, Petitioning Creditors contend that the Court should find that their actions taken in the filing of the Amended Involuntary Petition were reasonable. In support, Petitioning Creditors point to the filing of their "Emergency Motion to Appoint a Chapter 11 Trustee" filed contemporaneously with the original involuntary petition.[32] Petitioning Creditors, inter alia, reference the reasons cited in its emergency motion as to why the Court should invoke its bankruptcy powers, including:

(i)   the findings made in the Petitioning Creditors' chapter 11 case regarding Mr. Parker's dishonesty.

(ii)   the discovery in the Petitioning Creditors' chapter 11 cases showing that the HL Builders does not maintain any balance sheets, income statements, profit-and- loss statements or even a general ledger; and bank records produced by HL Builders to the Petitioning Creditors reflecting millions of dollars of distributions to Anna Williams, the owner of HL Builders and wife of Mr. Parker, which could be subject to avoidance to satisfy creditors' claims.

However, this Court made its own credibility determination with respect to Mr. Parker in its Memorandum Opinion[33] and is not bound by the factual findings of another court. There is no evidence before the Court establishing the alleged facts advanced by Petitioning Creditors and the Court will not rely on mere argument. The Court is not convinced that the facts of this case

---

[31] *In re Clean Fuel Techs. II, LLC*, 544 B.R. at 604.
[32] ECF No. 3.
[33] ECF No. 52.

call for resolution under its *exclusive* bankruptcy powers.[34]   The Court determined that each of Petitioning Creditors' claims against HL Builders were the subject of a bona fide dispute as to liability and amount.[35]   Such disputes can be resolved by other judicial avenues.   Accordingly, this factor weighs in favor of awarding attorney's fees to HL Builders.

### c.  Petitioning Creditors' Motivation and Objectives

Lastly, this factor focuses on a subjective and objective assessment of the motivations of Petitioning Creditors in filing an involuntary proceeding.[36]   Petitioning Creditors assert that the Court should find that this factor weighs against an award of attorney's fees because the subjective and objective motives of the Petitioning Creditors were appropriate, reasonable, and in good faith.[37]   The Petitioning Creditors argue they relied on the terms of the written Investor Agreement to establish that the Petitioning Creditors' had claims against  HL Builders.   In support, Petitioning Creditors reference the Court's Memorandum Opinion where the Court found that Petitioning Creditors established a prima facie case for their claims.[38]   However, while the Court did find that Petitioning Creditors established a prima facie case, the Court noted that "this is not a very high burden."[39]   As discussed at length in the Memorandum Opinion, the Court found that after a three day trial, nearly every aspect of the Petitioning Creditors' claims had been vehemently contested and controverted through live witness testimony and documentary evidence.[40]   As such, it is clear that a bona fide dispute existed, and Petitioning Creditors had less severe means of resolution than the filing of an involuntary bankruptcy case. Accordingly, this factor weighs in favor of awarding attorney's fees to HL Builders.

---

[34] *See In re Clean Fuel Techs. II, LLC*, 544 B.R. at 604.
[35] ECF No. 52.
[36] *In re Clean Fuel Techs. II, LLC*, 544 B.R. at 605.
[37] ECF No. 52.
[38] ECF No. 61.
[39] ECF No. 52.
[40] *Id.*

In sum, the Court finds that the Petitioning Creditors did not rebut the presumption under the totality of the circumstances test, and attorney's fees shall be awarded against the Petitioning Creditors under § 303(i). Next, the Court must address whether the HL Builder's Fee Application contains unreasonable and unnecessary fees.

## 2.  Whether HL Builders' Fee Application Contains Unreasonable and Unnecessary Fees

Petitioning Creditors contend that should the Court elect to award fees, which it does, HL Builders' Fee Application contains unnecessary fees that should be excluded and unreasonable fees that should be reduced.[41] Section 303(i) states that "[i]f the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment – (1) against the petitioners and in favor of the debtor for – (A) costs; or (B) a reasonable attorney's fee; or . . ."[42]

When a federal statute provides for attorney's fees, the Fifth Circuit uses the "lodestar" method to determine whether such fees are reasonable.[43] The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work.[44] There is a strong presumption of the reasonableness of the lodestar amount.[45] However, after calculating the lodestar fee, the Court has discretion to adjust that fee upwards or downwards based upon the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*[46] The *Johnson* factors are:

---

[41] ECF No. 61.
[42] 11 U.S.C. § 303(i).
[43] *In re Cahill*, 428 F.3d 536, 540 (5th Cir. 2005); *Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993).
[44] *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).
[45] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).
[46] *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[47]

The lodestar method is presumed to account for four of the twelve *Johnson* factors—(2) the novelty and complexity of the issues; (3) the special skill and experience of counsel; (8) the results obtained from litigation; and (9) the quality of representation.[48]  The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar.[49]  Additionally, the fee applicant bears the burden of demonstrating that an adjustment by application of the *Johnson* factors is necessary to calculate a reasonable fee.[50]

Here, the Fee Application requested compensation of $97,333.50 which is comprised of 227.4 attorney hours and 10.8 paralegal hours.[51]  Additionally, $2,809.35 is requested for reimbursement for expenses and $2,000 is requested for the preparation of the Fee Application. Therefore, the Fee Application requests a total amount of $102,142.85.[52]  The Court will use that amount as a starting point and now turns its attention to Petitioning Creditors' specific objections.

### a.  Petitioning Creditors' Specific Objections to HL Builders Fee Application

Petitioning Creditors have made the following specific objections to the Fee Application:

    i.       HL Builders failed to establish reasonable market rates

---

[47] *Johnson*, 488 F.2d at 717–19.

[48] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 659 (5th Cir. 2012); *Matter of Fender*, 12 F.3d 480, 488 (5th Cir. 1994) (*quoting Shipes v. Trinity Indus.*, 987 F.2d at 320.).

[49] *Saizan*, 448 F.3d at 800.  *But see Shipes*, 987 F.2d at 320 ("Although upward adjustments of the lodestar figure based on these [four] factors are still permissible, such modifications are proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings by the lower courts.").

[50] *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008).

[51] Pl.'s Ex. 1.

[52] *Id.*

     ii.     HL Builders' block billing includes unnecessary and improperly documented fees

     iii.     HL Builders' fees on preparing its brief are unreasonable

     iv.     HL Builders' fees on its Sur-Reply are unnecessary and unreasonable

     v.     HL Builders' block-billed time entries should be reduced by 75 percent

     vi.     The Court should exclude $1,550.00 in legal research

Collectively, Petitioning Creditors object to $78,815.00 in legal fees and $1,550.00 in expenses in the Fee Application. While a total is not explicitly provided in its Fee Objection, Petitioning Creditors break down the amounts within each specific objection. As such, Petitioning Creditors' objections will each be taken into account in determining whether the Fee Application is reasonable under the lodestar method.

### i. Whether HL Builders' Established Prevailing Hourly Rates (Market Rates)

Petitioning Creditors contend that the Fee Application fails to establish "reasonable market rates."[53] Under the lodestar method, the Court must first calculate the prevailing hourly rate.[54] Reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community.[55] This Court is entitled to rely on its knowledge of customary billing practices in the relevant community to determine a reasonable rate.[56] Counsel for HL Builders provided the following rates: [57]

     Richard L. Fuqua ("*Fuqua*") – $500/hour

     Mary Ann Bartee ("*Bartee*") – $350/hour

---

[53] ECF No. 61.

[54] The Court finds that Petitioning Creditors' usage of "market rate" is synonymous with the "prevailing hourly rate" under the lodestar method.

[55] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).

[56] *In re Garza*, 2020 WL 718444, at *2 (Bankr. S.D. Tex. Feb. 12, 2020).

[57] *See* ECF No. 56 at 4.

T.J. O'Dowd (paralegal) ("<em>O'Dowd</em>") – $95/hour

Here, the relevant community is Houston, Texas. As a sitting bankruptcy judge in the Southern District of Texas, the undersigned judge is well aware of the billing practices in the relevant community in question. Upon review, the Court finds that rates contained within HL Builders' Fee Application are commensurate with the reasonable rates charged in the Houston market and are appropriate in defending an involuntary petition such as this. Accordingly, the hourly rates set forth for Fuqua, Bartee, and O'Dowd are reasonable for the lodestar calculation. This Court next turns to the reasonableness of hours.

### ii. Whether HL Builders' Block Billing Includes Unnecessary and Improperly Documented Fees

Petitioning Creditors assert that the Target Debtor submitted time sheets with entries that include work spent on tasks other than defending against the involuntary petition and should be excluded.[58] Regardless of objections to fee applications, or lack thereof, the Court's duty is to examine the application for non-compensable hours.[59] "Time entries that do not provide sufficient detail to determine whether the services described are compensable may be disallowed due to vagueness."[60] Further, time entries may be vague if multiple services are lumped together without noting the time spent on each individual task listed.[61]

Here, Petitioning Creditors argue that what follows are time entries that should be excluded from the $102,142.85 sought by HL Builders. The Objection is sustained in part. After reviewing the entries listed by Petitioning Creditors in their objection, the Court finds that the following time entries should be allowed as follows:

---

[58] ECF No. 61.
[59] *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990).
[60] *In re Digerati Tech., Inc.*, 537 B.R. 317, 333 (Bankr. S.D. Tex. 2015) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).
[61] *Id.* at 334.

| Date | Timekeeper | Description | Requested Amount | Allowed Amount |
|------|-----------|-------------|-----------------|----------------|
| 5/21/2019 | RLF | Review the involuntary bankruptcy petition and various motions; teleconference with Bob and Anna regarding the involuntary bankruptcy petition | $1,500.00 | $1,050.00 |
| 5/24/2019 | RLF | Conference with John Mcfarland regarding potential damage litigation | $1,000.00 | $700.00 |
| 5/24/2019 | RLF | Begin review of Bob's comments regarding the Trustees Motion | $1,000.00 | $700.00 |
| 6/6/2019 | RLF | Conference with Bob, Anna and John Mcfarland regarding litigation pertaining to the involuntary bankruptcy | $1,000.00 | $1,000.00 |
| 6/8/2019 | RLF | Work on response to Charles Rubio's pleadings | $1,250.00 | $875.00 |
| 6/8/2019 | RLF | Continued preparation of responses to motions and petition | $1,500.00 | $1,050.00 |
| 6/10/2019 | RLF | Edit responses to motion to consolidate | $500.00 | $350.00 |
| 6/11/2019 | RLF | Conference with Bob Parker regarding responses; work on responses to motion; teleconference with Charles Rubio regarding responses and need for a hearing | $1,250.00 | $875.00 |
| 6/29/2019 | RLF | Review documents; review prior Bob Parker testimony; teleconference with John Mcfarland regarding the court's prior order | $500.00 | $350.00 |
| 7/16/2019 | MAB | Search Harris county district clerk and Harris county clerk websites regarding potential litigation instituted by Charles Foster against Robert Parker and CD Homes | $455.00 | $455.00 |
| 7/19/2019 | RLF | Conference with Bob, Anna and John Mcfarland regarding our defense of the involuntary petition; requests to recover damages from the involuntary parties if we win | $1,500.00 | $1,050.00 |
| 8/30/2019 | RLF | Conference with M.A. Bartee regarding briefing on objection to claims | $250.00 | $0.00 |
| 8/30/2019 | RLF | Conference with M.A. Bartee, John Mcfarland and Bob regarding briefing in the involuntary, issues remaining and proceeding against plaintiffs and others | $1,500.00 | $1,050.00 |

| Date | Timekeeper | Description | | |
|---|---|---|---|---|
| 9/4/2019[62] | RLF | Conference with M.A. Bartee, John Mcfarland and Bob regarding briefing in the involuntary, issues remaining and proceeding against plaintiffs and others | *Duplicate objection – see previous entry* | X |
| 9/6/2019 | RLF | Review the brief and forward to John Mcfarland | $500.00 | $350.00 |
| 9/10/2019 | RLF | Teleconference with John Mcfarland regarding his analysis of the briefing issues; work on the issues for our preliminary response | $500.00 | $350.00 |
| | | **Total Amount of Fees:** | $14,205.00 | **$10,205.00** |

Accordingly, out of the $14,205.00 objected to by Petitioning Creditors, the Court awards $10,205.00 in fees.

### iii. Whether HL Builders' Fees on Preparing its Brief are Unreasonable

Petitioning Creditors argue that time entries in the Fee Application for the hours writing HL Builders' brief in response to the Amended Involuntary Petition are "facially unreasonable."[63] The objection is sustained in part. After reviewing the Fee Application, the Court finds that the following time entries should be allowed as follows:

| Date | Timekeeper | Description | Requested Amount | Allowed Amount |
|---|---|---|---|---|
| 9/5/2019 | RLF | Conference with M.A. Bartee regarding the brief and issues | $250.00 | $175.00 |
| 9/6/2019 | MAB | Confer with Richard Fuqua; research regarding statute of frauds with respect to modification of Hou-Tex investor and contractor agreements; receipt and review of Hou-Tex brief in support of involuntary petition | $875.00 | $0.00 |
| 9/6/2019 | RLF | Review the brief and forward to John | *Duplicate objection – see entry in* | X |

---

[62] This is a duplicate objection of the 8/30/2019 time entry with an incorrect date as listed by Petitioning Creditors in its Fee Objection.

[63] ECF No. 61 at 10.

| | | | | |
|---|---|---|---|---|
| | | McFarland | *objection no. (ii)* | |
| 9/9/2019 | MAB | Research Section 303 requirements for filing involuntary petition against alleged debtor; review trial and deposition transcripts for hearings re: Hou-Tex filing involuntary petition against cd homes | $2,520.00 | $1,764.00 |
| 9/10/2019 | MAB | Begin preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes' brief | $2,030.00 | $1,421.00 |
| 9/10/2019 | RLF | Teleconference with John Mcfarland regarding his analysis of the briefing issues; work on the issues for our preliminary response | *Duplicate objection – see entry in objection no. (ii)* | X |
| 9/11/2019 | MAB | Continued review of and preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes' brief; review hearing transcripts re: Hou-Tex filing involuntary petition against CD Homes | $2,100.00 | $1,470.00 |
| 9/12/2019 | MAB | Continued review of and preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes' brief; review hearing transcripts re: Hou-Tex filing involuntary petition against CD Homes | $1,925.00 | $1,347.50 |
| 9/12/2019 | RLF | Office conference with Bob Parker regarding the brief | $1,500.00 | $1,500.00 |
| 9/13/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes' brief; review hearing transcripts re: Hou-Tex filing involuntary petition against CD Homes | $2,450.00 | $1,715.00 |
| 9/16/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning | $1,400.00 | $980.00 |

| | | | | |
|---|---|---|---|---|
| | | creditors' brief in support of involuntary petition; research in support of CD Homes' brief | | |
| 9/17/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes' brief | $1,925.00 | $1,347.50 |
| 9/18/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes' brief | $1,575.00 | $1,102.50 |
| 9/18/2019 | RLF | Review and edit the brief; conference with MA Bartee, TJ and Sharon regarding the brief; teleconference with Bob about the brief | $1,000.00 | $700.00 |
| 9/19/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition | $787.50 | $787.50 |
| 9/19/2019 | RLF | Teleconference with Bob regarding the brief. Continued working on editing the brief | $750.00 | $525.00 |
| 9/20/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition | $1,050.00 | $1,050.00 |
| 9/20/2019 | RLF | Office conference with Bob regarding the brief; rework the brief | $1,500.00 | $1,050.00 |
| 9/21/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition | $1,225.00 | $1,225.00 |
| 9/23/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition and prepare findings of fact and conclusions of law | $2,345.00 | $1,641.50 |
| 9/23/2019 | RLF | Review and comment on the brief | $500.00 | $500.00 |
| 9/21/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition and findings of fact and conclusions of law | $1,225.00 | $857.50 |
| 9/25/2019 | MAB | Continued preparation of CD Homes' | $525.00 | $367.50 |

| Date | Timekeeper | Description | Requested Amount | Allowed Amount |
|---|---|---|---|---|
| | | brief in response to petitioning creditors' brief in support of involuntary petition and findings of fact and conclusions of law | | |
| 9/26/2019 | RLF | Teleconference with Bob; read the brief and findings of fact; edit brief and findings of fact; conference with MA Bartee regarding the brief | $1,000.00 | $700.00 |
| 9/27/2019 | RLF | Office conference with MA Bartee and Bob regarding the brief and the findings of fact | $500.00 | $350.00 |
| 9/28/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition and findings of fact and conclusions of law | $1,400.00 | $980.00 |
| 9/28/2019 | RLF | Review and edit the brief and findings of fact | $750.00 | $525.00 |
| 9/23/2019 | MAB | Preparation of finalizing and filing CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition and findings of fact and conclusions of law | $1,225.00 | $857.50 |
| 9/30/2019 | RLF | Finish brief and findings of fact | $750.00 | $525.00 |
| | | **Total Amount of Fees:** | $35,082.50 | **$25,464.00** |

Accordingly, out of the $35,082.50 objected to by Petitioning Creditors, the Court awards $25,464.00 in fees.

### iv. Whether HL Builders' Fees for Preparation of its Sur-Reply are Unnecessary and Unreasonable

Petitioning Creditors argue that time entries in the Fee Application in connection with its sur-reply are facially unreasonable and should be substantially reduced.[64]   The objection is sustained in part.  After reviewing the Fee Application, the Court finds that the following time entries should be allowed as follows:

| Date | Timekeeper | Description | Requested Amount | Allowed Amount |
|---|---|---|---|---|

---

[64] *Id.* at 13.

| | | | | |
|---|---|---|---|---|
| 10/7/2019 | MAB | Review Houtex Builders' Sur-Reply brief in support of Involuntary petition. | $245.00 | $171.50 |
| 10/7/2019 | RLF | Read the Sur Reply | $500.00 | $500.00 |
| 10/8/2019 | MAB | Prepare CD Homes' sur-reply brief in response to Petitioning creditors' sur-reply brief in support of Involuntary petition | $1,855.00 | $1,855.00 |
| 10/8/2019 | RLF | Teleconference with Bob regarding the sur reply issues | $250.00 | $250.00 |
| 10/9/2019 | MAB | Continued preparation of CD Homes' sur-reply brief in response to petitioning creditors' sur-reply brief in support of involuntary petition | $2,520.00 | $2,520.00 |
| 10/10/2019 | MAB | Continued preparation of CD Homes' sur-reply brief in response to petitioning creditors' sur-reply brief in support of involuntary petition | $2,345.00 | $2,345.00 |
| 10/10/2019 | RLF | Review, edit and rewrite the sur reply | $500.00 | $500.00 |
| 10/11/2019 | MAB | Continued preparation of CD Homes' sur-reply brief in response to petitioning creditors' sur-reply brief in support of involuntary petition | $2,275.00 | $2,275.00 |
| 10/11/2019 | RLF | Read and approve the sur reply draft | $500.00 | $500.00 |
| 10/14/2019 | MAB | Attention to CD Homes' sur-reply brief in response to petitioning creditors' sur-reply brief in support of involuntary petition | $2,730.00 | $2,730.00 |
| 10/14/2019 | RLF | Conference with MAB regarding additional sur reply additions | $500.00 | $0.00 |
| | | | | |
| | | **Total Amount of Fees:** | $14,220.00 | **$13,646.50** |

Accordingly, out of the $14,220.00 objected to by Petitioning Creditors, the Court awards

$13,646.50 in fees.

> **v. Whether HL Builders' Alleged Block-Billed Time Entries Should be Reduced by 75 Percent**

As noted, time entries that do not provide sufficient detail to determine whether the

services described are compensable or are lumped together without noting the time spent may be

disallowed due to vagueness.[65]   Here, Petitioning Creditors contend that HL Builders' Fee

Application contains 43 block-billed entries totaling 111.2 hours of work.[66]  Petitioning Creditors

total the 111.2 hours of work at $43,240.40.   Upon closer examination, a multitude of the 43-

time entries listed in this section are duplicate objections.   Petitioning Creditors do not indicate

whether the duplicates in this section were meant to serve as objections in the alternative (i.e. if

the time entry cannot be disallowed entirely, Petitioning Creditors request the time entry be

reduced by 75 percent).   Because the Court already addressed the time entries in dispute at this

point, the Court will disregard any duplicate objection in this section.   As such, after reviewing

the Fee Application, the Court finds that the following time entries should be allowed as follows:

| Date | Timekeeper | Description | Requested Amount | Allowed Amount |
|------|-----------|-------------|------------------|----------------|
| 5/21/2019 | RLF | Review the involuntary bankruptcy petition and various motions: teleconference with Bob and Anna regarding the involuntary bankruptcy petition | *Duplicate objection – see entry in objection no. (ii)* | X |
| 5/22/2019 | RLF | Review files on involuntary bankruptcy; dictate letter to Rubio | $375.00 | $375.00 |
| 6/5/2019 | TJO | Review RLF's notes to docket entries regarding hearing transcripts; preparation of hearing transcript orders and forward same to court | $95.00 | $0.00 |
| 6/11/2019 | RLF | Conference with Bob Parker regarding responses; work on responses to motion; teleconference with Charles Rubio regarding responses and need for a hearing | *Duplicate objection – see entry in objection no. (ii)* | X |

---

[65] *In re Digerati Tech., Inc.*, 537 B.R. at 333.
[66] ECF No. 61.

| | | | | |
|---|---|---|---|---|
| 6/28/2019 | MAB | Confer with Richard Fuqua regarding deposition of petitioning creditors; prepare notice of deposition of petition creditors representative with document request | $350.00 | $0.00 |
| 6/29/2019 | RLF | Review documents; review prior Bob Parker testimony; teleconference with John Mcfarland regarding the court's prior order | *Duplicate objection – see entry in objection no. (ii)* | X |
| 7/3/2020 | TJO | Telephone conference with Cindy at worldwide court reporters regarding deposition of Charles Foster scheduled for July 9, 2019; preparation of amended notice deposition of Charles Foster | $38.00 | $38.00 |
| 7/8/2019 | RLF | Teleconference with Bob regarding preparation for the Foster deposition; review my notes with Bob for approach to Foster deposition | $750.00 | $525.00 |
| 7/9/2020 | RLF | Conference with Bob pre-deposition of Charles Foster; attend deposition of Charles Foster | $2,500.00 | $1,750.00 |
| 7/10/2019 | TJO | Preparation of witness and exhibit list for July 16th hearing on involuntary; review judge's calendar for July 16th and update file | $47.50 | $47.50 |
| 7/11/2019 | TJO | Email copies of witness & exhibit list and exhibits to Bob Parker for review; telephone conferences with Bob Parker regarding exhibits for evidentiary hearing on involuntary | $47.50 | $0.00 |
| 7/11/2019 | TJO | Revise witness and exhibit list; review proofs of claim filed by CD Homes, LLC in Houtex, Shadywood and Looscan Lane chapter 11 cases | $66.50 | $0.00 |
| 7/12/2019 | RLF | Request for and begin review of petitioning creditors trial exhibits | $750.00 | $525.00 |

| | | | | |
|---|---|---|---|---|
| 7/12/2019 | TJO | Assemble exhibits and e-file witness & exhibit list with court; and forward copies of same together with exhibits to counsel for petitioning creditors; | $190.00 | $190.00 |
| 7/15/2020 | RLF | Trial preparation, compile and review exhibits, review pleadings, analyze various approaches | $2,000.00 | $1,400.00 |
| 7/17/2019 | TJO | Review Judge Rodriguez's procedures for delivery of hl builders exhibits from July 16, 2019 hearing: preparation of cd containing exhibits and letter to case management regarding same | $95.00 | $0.00 |
| 7/19/2019 | RLF | Conference with Bob, Anna and John Mcfarland regarding our defense of involuntary petition; requests to recover damages from the involuntary parties if we win | *Duplicate objection – see entry in objection no. (ii)* | X |
| 8/12/2019 | RLF | Teleconference with Bob regarding upcoming hearing; begin preparation for hearing' read all Charles Foster transcripts | $1,500.00 | $1,050.00 |
| 8/13/2019 | RLF | Finish review of prior involuntary hearing record; conference with Bob regarding our approach going forward and address open issues; begin preparing bob as a witness | $1,750.00 | $1,225.00 |
| 8/15/2019 | TJO | Review courtroom minutes of 8/15/19 hearing; calendar resumed hearing date for 8/20/19 | $19.00 | $0.00 |
| 8/15/2019 | TJO | Preparation of daily transcript order regarding 8/15/19 hearing on involuntary; submission of same to court clerk for docketing and forwarding transcription service | $28.50 | $28.50 |
| 8/16/2019 | TJO | Telephone conference with Bob parker regarding transcript; review court docket regarding same | $19.00 | $19.00 |
| 8/19/2019 | TJO | Telephone conference with Dion at veritext transcription service regarding status of transcript; | | |

| | | | | |
|---|---|---|---|---|
| | | telephone conference with Bob Parker regarding same; forward email; from veritext to RLF and Bob Parker regarding estimated time of completion | $28.50 | $28.50 |
| 8/20/2019 | RLF | Office conference with Bob to prepare for continued involuntary trial; attend trial | $4,000.00 | $2,800.00 |
| 8/20/2019 | TJO | Preparation of exhibit list and copy exhibits for 8/20/19 hearing on involuntary | $76.00 | $76.00 |
| 8/21/2019 | TJO | Review courtroom minutes from 8/20/19 hearing and calendar briefing deadlines | $28.50 | $28.50 |
| 8/21/2019 | TJO | Preparation of transcript order of hearing held 8/20/19; upload same to court | $28.50 | $28.50 |
| 9/4/2019 | MAB | Confer with Richard Fuqua; research involuntary petition jurisdictional requirements and burden of proof regarding bad faith filing | $525.00 | $0.00 |
| 9/6/2019 | MAB | Confer with Richard Fuqua; research regarding statute of frauds with respect to modification of Hou-Tex investor and contractor agreements; receipt and review of Hou-Tex brief in support of involuntary petition | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/9/2019 | MAB | Research section 303 involuntary petition against alleged debtor; review trial and deposition transcripts for hearing re: Hou-Tex filing involuntary petition against CD Homes | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/10/2019 | MAB | Begin preparation of CD Homes' brief in response to petitioning creditors brief in support of involuntary petition; research in support of CD Homes brief | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/10/2019 | RLF | Teleconference with John Mcfarland regarding his analysis of the briefing issues; work on the | ***Duplicate objection – see entry in*** | |

| | | | | |
|---|---|---|---|---|
| | | issues for our preliminary response | ***objection no. (ii)*** | X |
| 9/11/2019 | MAB | Continued review of and preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes brief; review hearing transcripts re: Hou-Tex involuntary petition against CD Homes | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/12/2019 | MAB | Continued review of and preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes; review hearing transcripts re; Hou-Tex involuntary petition against CD Homes | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/13/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes' brief; review hearing transcripts re: Hou-Tex filing involuntary petition against CD Homes | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/16/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors brief in support of involuntary petition; research in support of CD Homes brief | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/17/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes' brief | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/18/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition; research in support of CD Homes brief | ***Duplicate objection – see entry in objection no. (iii)*** | X |
| 9/18/2019 | RLF | Review and edit the brief; conference with MA Bartee, TJ and Sharon regarding the brief; teleconference with Bob about the brief | ***Duplicate objection – see entry in objection no. (iii)*** | X |

| | | | | |
|---|---|---|---|---|
| 9/19/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition | *Duplicate objection – see entry in objection no. (iii)* | X |
| 9/19/2019 | RLF | Teleconference with Bob regarding the brief; continued working on editing the brief | *Duplicate objection – see entry in objection no. (iii)* | X |
| 9/23/2019 | MAB | Continued preparation of CD Homes' brief in response to petitioning creditors' brief in support of involuntary petition and prepare findings of fact and conclusions of law | *Duplicate objection – see entry in objection no. (iii)* | X |
| 9/26/2019 | RLF | Teleconference with Bob; read the brief and findings of fact; edit brief and findings of fact; conference with MA Bartee regarding the brief | *Duplicate objection – see entry in objection no. (iii)* | X |
| | | **Total Amount of Fees:** | $15,307.50 | **$10,134.50** |

Accordingly, out of the $15,307.50 objected to by Petitioning Creditors, the Court awards $10,134.50 in fees.

## vi.  Whether the Court Should Exclude $1,550.00 in Legal Research

HL Builders seeks a total of $2,809.35 in out-of-pocket expenses.  Petitioning Creditors assert that HL Builders' submission of costs for legal research is vague and should not be awarded.[67]  The objection is sustained in part.  After reviewing the Fee Application, the Court finds that the following expenses should be allowed as follows:

| Description | Amount | Amount Awarded |
|---|---|---|
| Postage | $38.80 | $38.80 |
| Photocopies | $476.75 | $476.75 |
| Research | $1,550.00 | $1,085.00 |
| Transcripts | $634.80 | $634.80 |
| Delivery | $109.00 | $109.00 |

---

[67] *Id.*

| Total Amount of Expenses: | $2,809.35 | **$2,344.35** |
|---|---|---|

Accordingly, the Court awards $2,344.35 in expenses.  The Court turns its attention to the amount of fees in the Fee Application that are not in dispute.

### b.  Amount of Undisputed Fees in the Fee Application

Petitioning Creditors objected to $78,815.00 in legal fees.[68]   Given that the Fee Application requested compensation of $99,333.50 in legal fees, there is a difference of $20,518.50 of legal fees not in dispute.  Nevertheless, the Court will examine the entirety of the Fee Application and its related time entries.

Upon review of the time entries not in dispute, $20,518.50 is reasonable in light of the circumstances.  The instant case was vehemently litigated requiring three days of hearings and hours of testimony.  At the conclusion of the hearings, each party submitted extensive briefing to the Court.  It is to be expected that additional fees follow from litigious activity.  As such, the Court awards $20,518.50 in undisputed legal fees.

In total, the Court finds that the lodestar method calls for an award of $79,968.50 in legal fees.[69]   As such, after accounting for the lodestar method and Petitioning Creditors' objections, the Court finds that HL Builders shall be awarded reasonable and necessary fees in the amount of $79,968.50 plus expenses in the amount of $2,344.35 for an overall award of $82,312.85.  Next, the Court must determine whether the lodestar amount should be adjusted based on the *Johnson* factors.

### c.  Johnson Factors

The Court begins by noting the strong presumption of the reasonableness of the lodestar

---

[68] Not including expenses.
[69] Representing $59,450.00 award from disputed time entries and $20,518.50 from undisputed time entries.

amount, and the fact that applicants must demonstrate a necessary adjustment to calculate a reasonable fee.[70]  Regarding the first factor, time and labor required, the Court notes that there was highly litigious activity involved in the filing of the Involuntary Petition.  As discussed herein, the instant case required a three-day trial, hours of live testimony, post-trial briefing, and over fifty entries on the Court's docket.  As such, the Court finds that the extensive time and labor involved here is adequately represented in the lodestar analysis.

The second and third factors, novelty and difficulty of the questions, and skill requisite to perform the legal services properly, are subsumed by the lodestar method.  As to the fourth factor, preclusion of other employment by attorney due to the case, the parties presented no evidence that would merit a departure from the lodestar method.

Under the fifth factor, the customary fee, the Court found that the rates charged by HL Builders' counsel are commensurate with the reasonable rates charged in the Houston legal market and are appropriate in defending an involuntary petition such as this.  Regarding the sixth factor, whether the fee is fixed or contingent, it is apparent from the Fee Application that Debtor was to pay  HL Builders' counsel on an hourly basis, and for all intents and purposes, it is a contingent fee, as HL Builders' counsel will receive no additional compensation beyond an award of attorney fees and expenses.  The Court does not find a departure from the lodestar method reasonable under factor six.  Under factor seven, time limitations, the Court does not find it relevant, as any time limitations imposed were not out of the ordinary for defending an involuntary petition such as this.

Factors eight and nine, the amount involved, results obtained, the experience, reputation, and ability of counsel, are subsumed by the lodestar method.  Factor ten, the undesirability of the

---

[70] *Perdue*, 559 U.S. at 552; *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d at 755.

case, the Court notes again that this case, while hotly contested, was not out of the ordinary for defending an involuntary petition.  As such, the Court does not find a departure from the lodestar method reasonable or necessary.  Regarding factor eleven, the nature and length of the professional relationship with the client, the Court does not find this factor relevant.  Lastly, factor twelve, awards in similar cases, the Court finds that although the requested lodestar fee award here is higher than other similar cases,[71] the facts of this case warrant the amount of fees requested.

After reviewing the *Johnson* factors, the Court finds that no basis exists to depart from the lodestar method.  Counsel for HL Builders provided an important function by securing relief for HL Builders by seeking and obtaining a dismissal of the involuntary petition.

### d.  Post-Judgment Interest

The Court will also order Petitioning Creditors to pay post-judgment interest on the total amount of attorney's fees and expenses awarded to HL Builders.  The Fifth Circuit has held that interest on attorney's fees begins to accrue on the date of the judgment allowing recovery of attorney's fees and runs until the date the fees are paid in full.[72]  Further, if the prevailing party is awarded attorney's fees and those fees are a part of the judgment, then those fees will bear interest at the same rate as that applied to the judgment on the merits.[73]  The Fifth Circuit allows this interest on attorney's fees because it "better serve[s] the purpose of awarding these expenses to the prevailing party since it . . . more nearly compensate[s] the victor for the expenses of the

---

[71] *See In re Meltzer,* 535 B.R. 803, 812 (Bankr. N.D. Ill. 2015) (court awarded $60,788.86 in fees for 179.2 hours upon dismissal of an involuntary petition); *In re Funnel Sci. Internet Mktg., LLC*, 551 B.R. at 276 (district court affirmed bankruptcy court's ruling in awarding $20,000 in fees upon dismissal of involuntary petition).

[72] *See Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542, 544–45 (5th Cir. 1983) (en banc), *overruled in part on other grounds by J.T. Gibbons, Inc. v. Crawford Fitting Co.,* 790 F.2d 1193, 1195 (5th Cir. 1986), *aff'd* 482 U.S. 437 (1987).

[73] *Id.*

litigation."[74]   In the suit at bar, the rate that will be in effect on the date of the entry of the judgment will be 0.13 percent per annum.[75]

### 3. Whether the Court Should Enter the Fee Award to HL Builders or Fuqua & Associates, PC

Section 303(i) provides that the Court may award fees "[a]gainst the petitioners and in favor of the debtor."[76]   HL Builders' Fee Application states that the applicant is Fuqua & Associates, PC and seeks as relief an award of fees and costs to "Target Debtor's attorneys against Petitioning Creditors . . . ."[77]   Petitioning Creditors submit that, to the extent the Court awards fees, the fee award should be entered for the benefit of HL Builders and not directly to HL Builders' attorneys because it is not authorized under § 303(i).[78]   In support of its contention, Petitioning Creditors cite to *In re Miles* which states that the "specific reference to the 'debtor' [in § 303(i)] is a strong indication that Congress intended only the debtor to have standing to seek damages."[79]   Lastly, Petitioning Creditors argue that by awarding fees directly to HL Builders' attorneys, the Court will preclude Petitioning Creditors from any offsets to the fee award that might be justified based on the claims that Petitioning Creditors might establish against Target Debtor in another proceeding.

Here, the Court rejects Petitioning Creditors' argument that any award to Fuqua & Associates, PC will preclude Petitioning Creditors from any offsets to the fee award in another court at another time.   The Court will not engage in any discussion of how another court should

---

[74] *Id.* at 544.
[75] *Post-Judgment Interest Rates,* United States District & Bankruptcy Court Southern District of Texas, http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited October 30, 2020).
[76] 11 U.S.C. § 303(i)
[77] ECF 56 ¶ 41.
[78] *Compare* 11 U.S.C. § 303(i) ("the court may grant judgment [a]gainst the petitioners and in favor of the debtor . . . ") *with* ECF 56 ("Applicant, as Target Debtor's attorneys, pray that the Court award reasonable and necessary attorney's fees and costs to Target Debtor's attorneys against Petitioning Creditors . . . .").
[79] *Miles v. Okun (In re Miles)*, 430 F.3d 1083, 1093–94 (9th Cir. 2005).

interpret the impact of a decision made by this Court, and any such discussion would be advisory and inappropriate.  As such, Petitioning Creditors argument fails on this ground.

However, because the Fee Application requests a fee award directly to HL Builders' counsel, the pertinent issue in Petitioning Creditors' Fee Objection is whether the phrase "in favor of the debtor" contained in § 303(i) allows for an award to be paid directly to debtor's counsel instead of the debtor.  Upon examination of the case law and legislative history, it is clear that an award pursuant to § 303(i) must be awarded to the debtor.[80]  In the context of determining whether a fee award was appropriate under § 303(i), the Fifth Circuit framed the issue as whether the putative debtor could "recover" fees.[81]  A bankruptcy court in another circuit stated that the award under § 303(i) was "to reimburse [debtor] for its attorney's fees and costs incurred" as a result of the petitioning creditors' filing of an involuntary petition.[82]  In fact, the two cases cited by HL Builders in its reply brief granted fees to the debtor and not to debtor's counsel.[83]  HL Builders failed to provide the Court with any compelling reasons why the Court should deviate from the plain language of the statute and corresponding precedent.  Next, the House and Senate reports concerning § 303(i) state that "if a petitioning creditor filed the petition in bad faith, the court may *award the debtor* any damages proximately caused by the filing of the petition."[84]  Accordingly, the Court sustains this portion of Petitioning Creditors' objection and awards $82,312.85 in fees and expenses to HL Builders.

---

[80] *See In re Funnel Science Internet Marketing, LLC,* 551 B.R. at 262 (court awarded attorney's fees to the putative debtor for time that was spent responding to involuntary Chapter petition filed by creditors whose claims were all subject to bona fide dispute); *In re Petrosciences Int'l, Inc*., 96 B.R. 661, 666 (Bankr. N.D. Tex. 1988) (court awarded $10,000 in attorney's fees to the debtor); *In re Anmuth Holdings LLC*, 600 B.R. 168 (Bankr. E.D.N.Y. 2019) ("putative debtors were entitled to award of fees and costs incurred to their bankruptcy counsel").

[81] *In re McMillan*, 614 F. App'x 206 (5th Cir. 2015).

[82] *In re Forever Green Athletic Fields, Inc.*, 2017 WL 1753104, at *1 (Bankr. E.D. Pa. May 3, 2017).

[83] *See In re Schiliro*, 72 B.R. 147, 150 (Bankr. E.D. Pa. 1987); *see also In re Diloreto*, 388 B.R. 637, 655 (Bankr. E.D. Pa. 2008).

[84] S. Rep. 95–989, 34, 1978 U.S.C.C.A.N. 5787, 5820.

### III.   CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 10/30/2020.

Eduardo V. Rodriguez
United States Bankruptcy Judge